UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | | |
|---|---|---|
| O.V. MILLS, | ) | |
| | ) | |
| Petitioner, | ) | No. 6:08-CV-315-GFVT |
| | ) | |
| v. | ) | RECOMMENDED DISPOSITION |
| | ) | |
| WARDEN JOHN MOTLEY, | ) | |
| | ) | |
| Respondent. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

On October 1, 2008, Petitioner O.V. Mills, by counsel, filed a petition for a writ of habeas corpus under 28 U.S.C. § 2254. *See* DE #1 (Petition). With Respondent Warden John Motley's answer and Petitioner's subsequent reply, the matter now is ripe for consideration. *See* DE #8 (Answer by Motley); DE #10 (Reply by Mills).

For the reasons discussed below, the Court **RECOMMENDS** that the District Court **DISMISS** the petition. The Kentucky courts applied controlling Supreme Court precedent in an objectively reasonable manner and also reasonably determined the applicable facts. Petitioner fails to justify displacing the treatment of the matter by the courts of the Commonwealth.

**I. Background Information**

In late 1998, a Knox County jury convicted O.V. Mills of wanton murder and first-degree robbery and found Mills to be a persistent felony offender.[1] *See* DE #8-1 (State Court Record,

---

[1] The Court notes that O.V. Mills's co-defendant shares the same last name, though apparently no familial relation. To avoid confusion, the Court references the co-defendant always by status and never by name. Any reference to "Mills" should thus be understood as to Petitioner.

Part I) at 2-4 (Judgment and Sentence on Plea of Not Guilty). The victim suffered 39 stab wounds in the attack that led to his death. *See id.* at 6 (*Mills v. Commonwealth*, No. 1998-SC-1133-MR, at 2 (Ky. Oct. 25, 2001)).

Mills pursued an innocence defense. *See Mills v. Commonwealth*, No. 2004-CA-926-MR, 2005 WL 1125238, at *1 (Ky. Ct. App. May 13, 2005) (*Mills I*) (unreported). However, trial testimony conflicted concerning Mills's involvement. Petitioner admitted being present during the victim's murder, but blamed the stabbing and robbery wholly on his co-defendant. *See id.* Mills reported trying to stop the killing, but failing because of threats from or physical resistance by his co-defendant. *See id.* Petitioner also alleged being under duress and fear for his life when helping dispose of the body and burn the victim's vehicle. *See id.* In contrast, a prosecution witness testified that Mills claimed to have stabbed the victim in the throat after the victim made a sexual advance. *See id.* at *3. The day after the murder, Mills attempted to retrieve a CB radio belonging to the victim and thrown down an embankment after the attack. *See Mills v. Commonwealth*, No. 2006-CA-1149-MR, 2007 WL 2069819, at *1 (Ky. Ct. App. Jul. 20, 2007) (*Mills II*) (unpublished). *See id.*

The trial court instructed the jury on the offenses of murder (intentional or wanton) and first-degree robbery, as well as persistent felony offender status. *See id.* at *1. The court provided no lesser-included-offense instruction for second-degree manslaughter, and Mills's counsel did not request such an instruction or lodge any objection. After deliberating, the jury returned a verdict finding Mills guilty of wanton murder and first-degree robbery. *See id.* Also found to be a second-degree persistent felony offender, Mills received a sentence of life for the murder charge and 20 years for the robbery charge, with the sentences to run concurrently. *See*

2

*id.*

On direct appeal, the Kentucky Supreme Court affirmed. *See* DE #8-1 at 15. Mills argued, in relevant part, that the trial court should not have given the jury a wanton murder instruction at all **because the evidence indicated intentional murder**. *See id.* at 10-13. That is, "O.V. attempted to persuade the court to rule that there can be no pendant wanton murder charges to an intentional homicide." *Id.* at 10. The court rejected that argument and ruled that, when the evidence supports either an intentional murder instruction or a wanton murder instruction, trial courts should employ a combination instruction permitting both options. *See id.* at 11. The court briefly discussed second-degree manslaughter:

> The phrase "circumstances manifesting extreme indifference to human life" distinguishes murder from manslaughter. Second degree manslaughter is defined in KRS 507.040 as "when (...) he wantonly cause the death of another human being." The 1974 commentary to KRS does make the point that "Whether (wantonness) is so extreme that it demonstrates similar indifference is not a question that, in our view, can be further clarified; it must left directly to the trier of facts." KRS 507 at 77 (citing Model Penal Code § 201.2, Comment 2). Here, it appears that trial strategy precluded this instruction to the jury.

*See id.* at 12-13. The observation of trial strategy was, in context, dicta.

Mills properly pursued state postconviction relief under Kentucky Criminal Rule 11.42. *See* DE #8-2 (State Court Record, Part II) at 22 (Order from Knox Circuit Court). As basis, Mills claimed ineffective assistance of counsel in four areas, including failure to investigate and failure to request a lesser-included-offense jury instruction for second-degree manslaughter. *See id.* The trial court identified *Strickland v. Washington*, 104 S. Ct. 2052 (1984), as setting the standard for ineffective assistance of counsel claims, and the court discussed the two-prong test outlined by that case. *See* DE #8-2 at 23. Concerning the lesser-included-offense argument, the trial court reasoned,

> On direct appeal, Movant submitted the issue of whether the evidence supported his conviction for Wanton Murder. The Kentucky Supreme Court held that the evidence did support such finding. The Supreme Court noted that whether wantonness is so extreme that it demonstrates indifference to human life, is a question for the trier of facts, yet it appeared that trial strategy precluded an instruction on whether wantonness was so extreme that it demonstrated indifference to human life. *Supra Mills*, 98-SC-1133. Regardless of counsel's trial strategy, the court found that the jury could determine from the record that Movant engaged in the robbery, which created a grave risk to human life.
>
> . . . .
>
> The Kentucky Supreme Court found that the record supported the jury's finding of wanton murder. *Supra Mills*, 98-SC- 1 133. Assuming *arguendo* that counsel's failure to request an instruction on Manslaughter in the Second Degree constituted ineffective assistance, based on the findings of the Supreme Court, effective performance by counsel would not have produced a reasonable probability of a favorable result for Movant. Therefore, Movant failed to show that but for counsel's ineffective performance, a reasonable probability of a favorable result existed. Thus, R. Cr. 1 l.42 relief is not available.

*See id.* Here, the Knox Circuit Court relied substantially on the conclusions of the Kentucky Supreme Court via direct review. Without a hearing, the trial court denied relief.

On appeal, the Kentucky Court of Appeals affirmed in part and vacated and remanded in part. *See Mills I*, 2005 WL 1125238, at *5. Applying the *Strickland* analysis, the court agreed that three of Mills's four ineffective assistance arguments should be dismissed without a hearing, but the court remanded for an evidentiary hearing concerning the lesser-included-offense instruction. *See id.* Favorably to Mills, the Court of Appeals reasoned,

> In this case the jury rejected the prosecution's theory that O. V. was guilty of intentional murder while acting alone or in complicity with Dennis. Rather, it found that he was guilty of wanton murder because of his participation in the robbery that resulted in the death of the victim at the hands of O. V.'s cohort. Under the principles of the *Caudill* and *Kruse* cases, O. V. was entitled to an instruction on the lesser included offense of second-degree manslaughter.
>
> In its opinion affirming O. V.'s conviction and sentence on direct appeal, the Kentucky Supreme Court stated that it appeared an instruction for second-degree manslaughter was not given by the court due to the trial strategy of O.V.'s

4

> counsel. However, that statement was dicta, and there was nothing in the record to support it. Furthermore, even if counsel for O. V. purposefully declined to request the instruction, there may be an issue concerning whether such trial strategy was appropriate. If not, the issue becomes whether, considering the evidence and counsel's overall performance, such inappropriate trial strategy overcomes the presumption of effective assistance of counsel. *See Haight v. Commonwealth*, 41 S.W.3d 436, 441-42 (Ky. 2001).
>
> The trial court rejected O.V.'s claim of ineffective assistance of counsel on this ground for two reasons. First, it noted our supreme court's statement in its opinion that the instruction appeared to be precluded due to trial strategy. The trial court stated that such a finding discredits Movant's claim of ineffective assistance of counsel. For the reasons stated above, we disagree. Second, the trial court reasoned that even if counsel's failure to request the instruction constituted ineffective assistance, then the findings of the supreme court that the record supported the verdict of guilt on wanton murder indicated that effective performance by counsel would not have produced a reasonable probability of a favorable result for Movant. The trial court reasoned that O.V. failed to show that but for counsel's actions, a reasonable probability of a favorable result existed. Again, we disagree.
>
> Although the evidence may have supported a verdict of guilt for wanton murder, that is not the standard for determining whether the court should nevertheless have instructed the jury on the lesser-included offense. "An instruction on a lesser-included offense is required only if, considering the totality of the evidence, the jury might have a reasonable doubt as to the defendant's guilt of the greater offense, and yet believe beyond a reasonable doubt that he is guilty of the lesser offense." *Neal v. Commonwealth*, 95 S.W.3d 843, 850 (Ky. 2003). The jury in this case could have had a reasonable doubt as to the degree of wantonness required to convict O.V. of wanton murder and yet have believed beyond a reasonable doubt that he had such a degree of wantonness as to constitute guilt for the lesser-included offense of second-degree manslaughter.

*See id.* The Court of Appeals thus took issue with the trial court's substantial reliance on the Kentucky Supreme Court's direct-review findings and conclusions and sought to be sure that the trial judge properly explored and assessed the totality of the evidence via a hearing.

On remand, the trial court conducted a full evidentiary hearing. Petitioner called a single witness – his trial counsel, Hon. Kenneth Boggs – and conducted brief direct and redirect examinations. *See* DE #22 (Notice with DVD of Evidentiary Hearing). Boggs explained the defense theory at trial: "[H]e was not the killer." *See id.* at 10:25:40. Boggs contended that the

co-defendant had acted alone, blocked Mills's efforts to intercede, and coerced any after-the-fact involvement by Mills. *See id.* Counsel recalled discussing the case with Mills, but did not believe the two discussed jury instructions. He did not confer with Mills about a lesser-included-offense instruction. *See id.* at 10:30:39.

Boggs could not remember whether he knew, at the time of trial, about Mills's entitlement to a lesser-included-offense instruction. *See id.* at 10:31:57. However, he expressly stated, "If I had felt like it was warranted by the testimony that had been presented, I would have requested that . . . . The whole theory being that if the jury believed Mr. Mills and his version of what happened, that they would turn him loose." *See id.* This strategy, counsel agreed, was an intentional "all or nothing defense." *See id.* at 10:32:25.

Based on the testimony, the trial court concluded that counsel's decision not to request the subject jury instruction constituted trial strategy and, thus, that Mills had not established deficient performance. *See* DE #8-3 (State Court Record, Part III) at 20-21. Applying the *Strickland* test, the trial court reasoned,

> Pursuant to the record, when trial counsel failed to request a jury instruction of a lesser charge of second-degree manslaughter he was engaged in trial strategy. Trial counsel testified that based on Mills' contention that he did not murder the victim there was no evidence or reason to request the lesser offense in jury instructions. Mills was the only eyewitness to the crime and if the jury believed his testimony, trial counsel believed that the jury would acquit Mills. Mills has not shown that counsel's performance was deficient and has therefore failed to meet the test pronounced in *Strickland*.

*See id.*

On appeal, the Kentucky Court of Appeals affirmed. *See Mills II*, 2007 WL 2069819, at *2. Applying the *Strickland* test, the court determined that "sound trial strategy [can be] to present an all or nothing defense and waive the right to lesser included jury instructions." *Id.* The

6

court explained,

> Counsel testified "our theory was he (O.V. Mils) was not the killer." He further stated that he wanted Mills to testify, tell the truth about what happened and then give it "to the jury, leave it to their discretion." The trial court found that counsel's failure to request the second degree manslaughter instruction was indeed trial strategy. We give great deference to the trial court's decision regarding facts and witnesses before it. *Sanborn v. Commonwealth*, 975 S.W.2d 905 (Ky. 1998). Mills has not provided any evidence to persuade us that failure to request the lesser included instruction was anything but trial strategy.

*See id.* While Mills alleged that trial counsel had no knowledge the instruction was available, the Court of Appeals found otherwise. *See id.* Specifically, the court cited counsel's response when asked directly about this issue: "if I had felt like it was warranted by the testimony that had been presented, I would have requested that." *See id.* Finding the deficient performance prong of the *Strickland* test not established, the Court of Appeals elected not to provide a prejudice analysis. *See id.*

The Kentucky Supreme Court denied discretionary review. Mills timely filed the instant petition.

**II. Standard of Review**

The Antiterrorism and Effective Death Penalty Act of 1996 (hereinafter "AEDPA"), which amended 28 U.S.C. § 2254, established a "'highly deferential standard for evaluating state-court rulings,' which demands that state-court decisions be given the benefit of the doubt." *See Bell v. Cone*, 125 S. Ct. 847, 853 (2005) (quoting *Woodford v. Visciotti*, 123 S. Ct. 357, 360 (2002) (per curiam)) (quoting *Lindh v. Murphy*, 117 S. Ct. 2059, 2067 n.7 (1997)). Specifically, AEDPA requires:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the

7

adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*See* 28 U.S.C. § 2254(d)(1)-(2). A petitioner bears the burden of establishing that relief is warranted. *See Garner v. Mitchell*, 557 F.3d 257, 261 (6th Cir. 2009) (quoting *Caver v. Straub*, 349 F.3d 340, 351 (6th Cir. 2003)) (quoting *Romine v. Head*, 253 F.3d 1349, 1357 (11th Cir. 2001)).

The pending section 2254 petition sets forth an ineffective assistance of counsel claim, which presents mixed questions of law and fact. *See Strickland v. Washington*, 104 S. Ct. 2052, 2070 (1984); *United States v. Wagner*, 382 F.3d 598, 615 (6th Cir. 2004). Such a case typically falls under the "unreasonable application" clause, which governs such mixed questions. *See Railey v. Webb*, 540 F.3d 393, 397 (6th Cir. 2008) (citing *White v. Mitchell*, 431 F.3d 517, 523-24 (6th Cir. 2005)). The "unreasonable application" clause authorizes the granting of relief where "the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams v. Taylor*, 120 S. Ct. 1495, 1523 (2000) (O'Connor, J., writing for a majority as to Part II of her opinion except for a footnote). The inquiry centers upon a determination of whether the state's application was "objectively unreasonable." *See id.* at 1521. "Clearly established Federal law" consists of "the holdings, as opposed to the dicta, of [Supreme Court] decisions as of the time of the relevant state-court decision." *See id.* at 1523. Federal circuit court decisions may be

8

examined "not as binding precedent, but rather to inform the analysis of Supreme Court holdings to determine whether a legal principle had been clearly established by the Supreme Court." *See Foley v. Parker*, 488 F.3d 377, 382 (6th Cir. 2007) (citing Hill v. Hofbauer, 337 F.3d 706, 716 (6th Cir. 2003)).

A federal court must presume all determinations of factual issues made by the state court to be correct unless the petitioner rebuts that presumption by clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1). Findings of fact entitled to the presumption include "[p]rimary or historical facts found by state courts," *see Boggs v. Collins*, 226 F.3d 728, 736 (6th Cir. 2000), as well as factual findings made by state appellate courts based upon the trial record. *See Bowling v. Parker*, 344 F.3d 487, 497 (6th Cir. 2003) (citing *Sumner v. Mata*, 101 S. Ct. 764, 769 (1981)). However, the presumption does not fully apply when, as with an ineffective assistance claim resolved on the merits, the section 2254 petition involves mixed questions of law and fact. *See Strickland*, 104 S. Ct. at 2070; *Ramonez v. Berghuis*, 490 F.3d 482, 487 (6th Cir. 2007). In essence, while federal courts need not defer to ultimate findings regarding ineffectiveness of counsel, the "underlying facts" supporting such state court decisions warrant deference. *See, e.g., Strickland*, 104 S. Ct. at 2070 (requiring deference as to underlying facts); *Abdur'Rahman v. Bell*, 226 F.3d 696, 702 (6th Cir. 2000) (holding, per *Strickland*, that "state post-conviction trial court's findings of fact underlying its ineffectiveness inquiry should have been presumed correct").

**III. Analysis**

Petitioner's challenge relates to his counsel's failure to seek the lesser-included-offense instruction under Kentucky Revised Statute section 507.040. Although the Kentucky courts

found that counsel's decision was a matter of proper strategy, Mills criticizes that factual finding. He also alternatively contends that the Kentucky courts unreasonably applied *Strickland*. The Court disagrees with each argument, under AEDPA standards.

When asserting an ineffective assistance of counsel claim, a petitioner must prove, by a preponderance of the evidence, both deficient performance and prejudice. *See Strickland*, 104 S. Ct. at 2064; *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006). First, in order to prove deficient performance, a petitioner must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *See Strickland*, 104 S. Ct. at 2064. A petitioner meets this burden by showing "that counsel's representation fell below an objective standard of reasonableness" as measured under "prevailing professional norms" and evaluated "considering all the circumstances." *See id.* at 2064-2065. Judicial scrutiny of counsel's performance, however, is "highly deferential," consisting of a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *See id.* at 2065. Deficient performance is considered constitutionally prejudicial, the second prong of the analysis, only when "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *See id.* at 2064. In order to prove prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *See id.* at 2068. When evaluating prejudice, courts must take into consideration the "totality of the evidence before the judge or jury." *See id.* at 2069.

As previously noted, federal courts need not defer to ultimate findings regarding the performance and/or prejudice prongs of the effectiveness analysis. However the "underlying

facts" supporting such state court decisions warrant deference. *See, e.g., Strickland*, 104 S. Ct. at 2070 (requiring deference as to underlying facts). Therefore, the Court conducts its analysis in accordance with the *Strickland* standard and AEDPA comity principles.

Petitioner gains no relief under the deficient performance prong of the *Strickland* analysis. Here, the Knox Circuit Court, on remand, conducted an evidentiary hearing exclusively on trial counsel's decision not to request a lesser-included-offense jury instruction on second-degree manslaughter. Relying on factual findings from that hearing, the Kentucky courts determined Mills merited no postconviction relief.

The state courts specifically found that trial counsel elected against requesting the instruction as a strategic choice. The trial court recounted, "Trial counsel testified that based on Mills' contention that he did not murder the victim there was no evidence or reason to request the lesser offense in jury instructions. Mills was the only eyewitness to the crime and if the jury believed his testimony, trial counsel believed that the jury would acquit Mills." *See* DE #8-4 at 20-21. This account indicates that, based on the trial court's focus on the particular testimony, the court determined trial counsel to be credible concerning trial strategy. That strategy, according to the testimony, derived from an actual innocence defense, whereby counsel and Mills sought full acquittal. This strategy proves reasonable because (1) trial counsel developed the strategy from the evidence and Mills's account of what occurred and (2) if an acquittal could have been obtained, Mills would have walked out of the courtroom, by order of the court, a free man. Apparently, the jury saw matters differently than trial counsel and Mills hoped they might, but this result, while no doubt disappointing to Mills, provides no basis for habeas relief. The court of appeals recognized and deferred to counsel's strategic assessment.

Mills has not clearly shown that the state court unreasonably made these factual assessments. At the hearing, Boggs indicated familiarity with the lesser-included charge and specifically agreed that the defense pursued an "all or nothing" strategy. *See* DE #22 at 10:32:25. He assessed the evidence presented, centering on Mills's story of complete innocence, and determined that the manslaughter instruction was not "warranted." *See id.*

The Kentucky Court of Appeals ultimately held that Mills would have been entitled to the instruction,[2] but Boggs did not testify that he doubted whether he could get that instruction. Rather, he did not believe the testimony warranted asking for the charge. The election to forgo an instruction as a matter of trial-context strategy certainly is within the broad range of professional competence sanctioned by *Strickland*. Boggs felt good about the evidence and thought Mills had a "decent shot" or "good chance" of acquittal. *See id.* at 10:33-10:34. The "whole theory" espoused was that if the jury bought Mills's version, "they would turn him loose." *See id.* at 10:32:00. Cases readily recognize the propriety of counsel electing against an instructional option that does not square with the defense theory of a case, even in the specific scenario presented in Mills's trial. *See, e.g., Tinsley v. Million*, 399 F.3d 796, 808 (6th Cir. 2005); *Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002); *Anderson v. Prelesnik*, No. 1:08-CV-250, 2010 WL 395907, at *28 (W.D. Mich. Jan. 4, 2010) (unreported) (collecting cases and stating: "Pursuing an 'all-or-nothing' strategy of refusing to request instructions on lesser-included

---

[2] Of course, the Court accepts this determination under Kentucky law. However, the cases suggest this issues to be nuanced rather than categorical. Even *Caudill*, which the Kentucky court relied upon, involved a proper denial of the instruction where case evidence would not have supported a finding on the state-of-mind logic implicated by second degree manslaughter. *See Caudill v. Commonwealth*, 120 S.W.3d 635, 669 (Ky. 2003). The evidence still must support an instruction, even if a charge falls within the lesser-included-offense rubric. *See Parker v. Commonwealth,* 952 S.W.2d 209, 211 (Ky. 1997) (denying lesser-included-offense instructions where defense theory was "a complete denial" of involvement).

offenses in the hope that a jury may find insufficient evidence to convict . . . can constitute valid trial strategy[.]"). The Kentucky courts made a reasonable assessment of the facts, and Mills has not clearly shown error in the evaluation. Mills thus does not pass the section 2254(e)(1) presumption.

Finally, the Court summarily addresses the failure of Boggs to consult with Mills. The state courts did not resolve the issue, but it is indisputable that counsel did not discuss the instructions or manslaughter strategy with Mills. *See* DE #22 at 10:30:39. Petitioner here made a passing and undeveloped reference to the argument and cited *Strickland*'s consultation duty. The Court finds no basis for habeas relief here. A line exists between matters requiring consultation and consent and matters entrusted to counsel's tactical and trial management authority. The Supreme Court mandates consultation regarding "'important decisions,' including questions of overarching defense strategy." *Florida v. Nixon*, 125 S. Ct. 551, 560 (2004). However, the decisions implicating this duty involve only "the exercise or waiver of basic trial rights," thus "'whether to plead guilty, waive a jury, testify . . . or take an appeal.'" *See id.* (quoting *Jones v. Barnes*, 103 S. Ct. 3308, 3312 (1983)); *see also United States v. Chapman*, 593 F.3d 365, 369 (4th Cir. 2010) (limiting consultation requirement to "fundamental issues" identified in *Nixon*, *i.e.*, "pleading guilty, waiving a jury, taking the stand, and appealing").

Mills does not cite any cases placing the instructional matter within this duty to consult. The Court also does not perceive the instruction as involving a due process concern because this was not a capital case. The United States Supreme Court has held that, in a capital case, a failure to instruct on a lesser-included offense, supported by the evidence, violates due process. *See Beck v. Alabama*, 100 S. Ct. 2382, 2393-94 (1980). As relevant here, the Sixth Circuit interprets

13

*Beck* to stand for the related proposition that "the Constitution does not require a lesser-included offense instruction in non-capital cases." *See Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001). The Sixth Circuit explained that "it was the risk of an unwarranted conviction where the death penalty is imposed that the Court found intolerable. That is because 'there is a significant constitutional difference between the death penalty and lesser punishments [.]'" *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990) (en banc) (citing *Beck*, 100 S. Ct. at 2389). Absent a due process or other fundamental trial right nexus, the failure to consult does not provide an avenue to habeas relief.

As established conclusively by the pleadings and record, Mills's petition merits no section 2254 relief under the deficient-performance prong of the *Strickland* test. Accordingly, this Court recommends dismissal of the petition.[3]

## IV. Certificate of Appealability

A Certificate of Appealability may issue where a petitioner has made a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This standard requires a petitioner to demonstrate that "reasonable jurists would find the district court's assessment of the

---

[3] The state appellate decision did not reach prejudice during the second appeal, but the first appellate decision specifically evaluated prejudice. This Court finds that the state resolution on the *Strickland* deficiency prong was correct, under habeas standards. However, if Boggs acted deficiently, the first appellate decision (not appealed by the Commonwealth) determined prejudice in Mills's favor.

The Kentucky Court of Appeals specifically and directly disagreed with the trial court's prejudice rationale. *See Mills I*, 2005 WL 1125238, at *4-*5. The court noted its holding, based on the Kentucky Supreme Court's treatment, that Mills would have been entitled to the instruction. Further, the court explicitly found that Mills met the standard for the *Strickland* prejudice prong. The Commonwealth does not address why this unappealed determination would not be binding. If Boggs were deficient, Mills was, per the final assessment of the Kentucky courts, prejudiced by the conduct.

constitutional claims debatable or wrong." *Slack v. McDaniel*, 120 S. Ct. 1595, 1604 (2000); *see Miller-El v. Cockrell*, 123 S. Ct. 1029, 1039-40 (2003) (discussing development of standard). The reviewing court must indicate which specific issues satisfy the "substantial showing" requirement. 28 U.S.C. § 2253(c)(3); *see Bradley v. Birkett*, 156 F. App'x 771, 774 (6th Cir. 2005) (noting requirement of "individualized assessment of . . . claims") (citing *Porterfield v. Bell*, 258 F.3d 484, 487 (6th Cir. 2001)). For dismissals on procedural grounds, as to when a Certificate of Appealability should issue, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *See Slack*, 120 S. Ct. at 1604.

Here, the grounds for relief offered by Mills do not present a close constitutional issue meriting a Certificate. The Kentucky courts applied the *Strickland* deficient-performance analysis in an objectively reasonable manner and appropriately found supportive facts. Mills does not show any factual error with the required clarity. Accordingly, the Court recommends that the District Judge not issue a Certificate of Appealability.

## V. Recommendation

For the reasons discussed above, the Court **RECOMMENDS** that the District Court **DISMISS** the petition. Additionally, the Court recommends that the District Court **DENY** a Certificate of Appealability.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights and mechanics concerning this Recommended Disposition, issued under subsection (B) of the statute. *See also* Rules Governing Section 2254 Proceedings for the United States District Courts, Rule 8(b).

Within fourteen days after being served with a copy of this decision, any party may serve and file specific written objections to any or all findings or recommendations for determination, de novo, by the District Court. Failure to make a timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 106 S. Ct. 466 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

    This the 15th day of November, 2010.

Signed By:
*Robert E. Wier* REW
United States Magistrate Judge